1  MICHAEL RUBIN (SBN 80618)
   P. CASEY PITTS (SBN 262463)
2  ALTSHULER BERZON LLP
   177 Post Street, Suite 300
3  San Francisco, CA  94108
   Telephone:      (415) 421-7151
4  Facsimile:       (415) 362-8064
   E-mail:           mrubin@altber.com
5                        cpitts@altber.com

6  HEATHER CHASE (*pro hac vice forthcoming*)
   Major League Baseball Players Association
7  12 East 49th Street
   New York, NY  10017
8  Telephone:      (212) 584-6516
   Facsimile:       (212) 584-6616
9  E-mail:           hchcas@mlbpa.org

10 *Attorneys for Plaintiff*
   *Major League Baseball Players Association*
11

12

13                UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15

16 MAJOR LEAGUE BASEBALL PLAYERS          CASE NO. _____
   ASSOCIATION,
17                                        **COMPLAINT FOR DAMAGES AND**
                     Plaintiff,           **DECLARATORY AND INJUNCTIVE**
18                                        **RELIEF**
            v.
19
   BRENT POURCIAU and TOP VELOCITY, LLC,
20
                     Defendants.
21

22

23

24

25

26

27

28

Plaintiff Major League Baseball Players Association ("MLBPA") alleges as follows:

**INTRODUCTION**

1.  This action is brought by the MLBPA, on its own behalf and on behalf of its members, against Top Velocity, LLC ("Top Velocity"), a Louisiana-based marketing company that produces and sells promotional and instructional baseball videos, and its owner, Brent Pourciau ("Pourciau").  Despite repeated warnings from MLBPA, Top Velocity and Pourciau have knowingly, deliberately, and in callous disregard of MLBPA's and its members' statutory and common law rights, published and appropriated for defendants' own commercial benefit the names, images, and likeness of MLBPA's members, without obtaining a license or other authorization for such use, in advertising and promoting Top Velocity's programs, products, and services.

2.  Defendants' commercial exploitation of MLBPA's members' names, images, and other identifying information to increase the consumer appeal of defendants' products violates MLBPA's members' statutory and common law "rights of publicity," which those members have assigned to plaintiff MLBPA.  Defendants' commercial exploitation of MLBPA's members' names, images, and other identifying information also unlawfully misleads and deceives potential and actual customers of defendants' products by falsely suggesting that those members are affiliated, connected, or associated with Top Velocity and that those members support, sponsor, or approve of defendants' products, in violation of the federal Lanham Act, 15 U.S.C. §1125(a)(1)(A).

3.  MLBPA brings this action to recover compensation, statutory penalties, punitive damages, and disgorgement of profits for defendants' unauthorized uses of its members' names, images, and likenesses, to obtain an accounting of defendants' unlawful sales and profits, and to prevent defendants' further willful misappropriation of MLBPA's members names and identities.

**PARTIES**

4.  Plaintiff MLBPA is an unincorporated association with its principal place of business in New York, New York.  MLBPA represents major league baseball players in collective bargaining with Major League Baseball ("MLB"); in negotiating and entering into group

licensing agreements authorizing companies throughout the world to use the MLBPA-represented athletes' identities, names, and likenesses in commercial products and services under specifically negotiated terms and conditions; and in many other matters affecting its members' economic and privacy interests. A substantial number of the players represented by MLBPA work and/or reside in California, which has more Major League Baseball teams than any other state.

5. Defendant Pourciau is an individual domiciled in the State of Louisiana, Parish of St. Tammany. Defendant Pourciau is the sole owner, manager, officer, and/or employee of defendant Top Velocity, LLC. Defendant Pourciau conducts Top Velocity's business throughout the United States by targeting actual and potential customers through online and other forms of marketing, including by targeting and entering into business transactions with customers in Northern California and by conducting Top Velocity training camps across the country, including but not limited to in Napa, California.

6. Defendant Top Velocity is a Louisiana limited liability company with its principal place of business in Covington, Louisiana. Top Velocity is in the business of marketing and selling baseball programs, products, services, training, and facilities designed to enhance the baseball skills and performance of its customers. Top Velocity markets and sells its products, programs, and services through the internet (including at the website http://www.topvelocity.pro) and through advertising materials, guides, e-books, videos, computer programs, books, handbooks, and other means of commercialization. Top Velocity uses social media outlets such as Twitter and Facebook, as well as video streaming platforms like YouTube, to promote its products and services. Top Velocity targets its marketing to customers throughout the United States, including in Northern California; has sold its products, programs, and services to numerous customers in California; and has conducted training camps throughout the United States, including in Napa, California.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over MLBPA's Lanham Act claim under 28 U.S.C. §1331 because that claim arises under federal law. This Court has subject matter

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1   jurisdiction over MLBPA's California statutory and common law right-of-publicity claims under

2   28 U.S.C. §1367.

3        8.   Venue in this forum is proper because a substantial part of the events or omissions

4   giving rise to MLBPA's claims occurred in the Northern District of California.

5                                              **FACTS**

6        9.   Professional baseball players devote an enormous amount of time and effort to

7   developing the specialized skills necessary to succeed at the professional level.  For the small

8   percentage of players who succeed in reaching the highest level of the sport by playing major

9   league baseball, one of the important rewards for their years of effort and their professional

10  accomplishment is the establishment of a well-recognized personal and professional identity.

11  Major league baseball players are able to benefit from their controlled use of their carefully

12  developed public personas and identities to sponsor and support causes and institutions that are

13  meaningful to them, and to encourage their fans and others who have come to admire their

14  accomplishments to support those causes and institutions as well.  Those players are also able to

15  use their public personas and identities for commercial benefit, and for the benefit of their union,

16  the MLBPA, through such means as endorsement deals, paid appearances, licensing agreements,

17  and autograph sales.

18       10.  The right of publicity protects the ability of well-known individuals, including

19  MLBPA's members and other professional athletes, to control the commercial use of their

20  personas, including through the marketing and sale of products whose appeal is enhanced by an

21  association with those individuals.  As the Supreme Court has explained, the right of publicity

22  serves the "straightforward" purpose "of preventing unjust enrichment by the theft of good will."

23  *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 576 (1977).  The right of publicity

24  also "provides an economic incentive for [celebrities] to make the investment required to

25  produce a [work] of interest to the public." *Id.* at 563.  For professional athletes, the ability to

26  control the commercial use of their names and likenesses provides an important return on

27  substantial career investments.  At the same time, it enables those athletes to avoid being

28  associated with particular commercial products or works that they do not wish to be perceived as

1    supporting or endorsing.

2         11.  MLBPA is the exclusive group licensing agent for all current active MLB players.

3    In that role, MLBPA protects its members' hard-earned celebrity from being exploited for

4    unauthorized commercial use and enables its members to benefit economically and otherwise

5    from the unique commercial value created by their celebrity and by their collective support of

6    various forms of marketing, promotional activity, products, goods, and services.  Each active

7    MLB player has assigned to MLBPA the exclusive worldwide right to use, license, and

8    sublicense that player's name, number, nickname, likeness, signature, biographical sketch,

9    playing record, and other personal attributes (in any form, media or size, including video, digital

10   or otherwise) for purposes of any commercial marketing, promotional activity, product, or

11   service in which three or more such players are identified.  Any use of the protected attributes of

12   three or more players in connection with marketing, promotional activity, products, services, or

13   other commercial activities must be licensed through and authorized by MLBPA.

14        12.  As the exclusive group licensing agent for current MLB players, MLBPA regularly

15   negotiates group licensing agreements authorizing use of the players' names and likenesses in a

16   range of commercial products and services.  Through these agreements, MLBPA ensures that

17   those players are associated only with products they choose to support, that the commercial value

18   of their names and likenesses is neither tarnished nor diluted through misuse or overuse, and that

19   MLBPA and the players receive fair compensation when the players' personas are used to

20   increase the consumer appeal of a product or service.  The payments required by such licensing

21   agreements are owed and made to MLBPA, which uses the revenue generated thereby to cover

22   program expenses, support MLBPA programs including the players' charitable foundation, and

23   make annual distributions (subject to Executive Board approval) to players.

24        13.  Top Velocity was founded in 2007 by defendant Pourciau.  Pourciau is the owner

25   and operator of Top Velocity.  On information and belief, Pourciau is responsible for developing

26   Top Velocity's marketing, advertising, and promotional strategy, including by developing and

27   maintaining Top Velocity's website, the content of its social media accounts, the videos it shares

28

on YouTube and other video sharing websites, and the training camps it conducts throughout the country.

14.  Top Velocity sells consumers a series of programs and products that purport to improve baseball players' skill and performance.  These programs include, but are not limited to, programs for increasing pitching velocity; online and in-person group and private training camps; a nutritional program; training manuals; video analysis; and courses in recovering from arm injuries.  The prices for Top Velocity's programs and products vary, with some products costing more than $2,000 or $3,000.

15.  Top Velocity markets and sells its products through its website at http://www.topvelocity.pro, and it also uses the top-level domains http://www.topvelocity.net and http://www.topvelocity.org.  Top Velocity also markets its products through various social media accounts, by posting videos (many featuring Pourciau) on YouTube, and in person, at training camps and elsewhere.

16.  Since before the start of the applicable limitations period, Top Velocity has used the names and likenesses of MLB players represented by MLBPA to increase the commercial appeal of its products.  MLBPA has never entered into a group licensing agreement with defendants Pourciau or Top Velocity.  Neither MLBPA nor its members have granted licenses to Pourciau or Top Velocity or otherwise authorized defendants' commercial exploitation of MLBPA's members' rights of publicity.

17. During the applicable limitations period, Top Velocity's website has displayed the images of several MLBPA members, including well-known Major League baseball players like Aroldis Chapman, Josh Donaldson, Zach Wheeler, and Stephen Strasburg.  Defendants also displayed player images in defendants' social media postings and embedded YouTube videos that encouraged consumers to purchase Top Velocity's products and to visit its website, and otherwise to increase the commercial appeal of Top Velocity's website and products generally and to misleadingly suggest an association between the players and Top Velocity's products. Defendants caused MLBPA's members' names and images to appear alongside testimonials from other athletes in a manner that defendants intended to create the appearance that the

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

MLBPA members endorsed Top Velocity's products, when in fact they did not endorse such products.

18.  Because Top Velocity's website and other promotional materials displayed and has continued to display the names or likenesses of three or more current MLB players, Top Velocity was and is required to have obtained a group license from MLBPA for those uses.  Top Velocity did not obtain and has not obtained a license from MLBPA before using the names and likenesses of current MLB players on its website, and has never sought or obtained such a license.

19.  In February 2018, MLBPA notified Top Velocity that its website and social media accounts contained numerous infringing uses of its members' names and likenesses, in violation of the rights of the players and MLBPA.  Top Velocity's website, social media accounts, and other promotional materials contained and still contain numerous other infringing images of current MLB players.  Although MLBPA has repeatedly warned Top Velocity that it was infringing on MLBPA's group license rights, Top Velocity has never done more than remove a handful of infringing images from its sites while continuing to maintain other infringements.

20.  Even after several warnings from MLBPA, Top Velocity and Pourciau's promotional materials have continued to depict many MLBPA members, including Aroldis Chapman, Billy Hamilton, Dylan Bundy, Joe Kelly, Jose Quintana, Stephen Strasburg, Ken Giles, Kyle Hendricks, Marcus Stroman, and Zach Wheeler.

21.  For example, content that appeared on Top Velocity's website in June 2018 included a picture of Chapman and Hamilton with text that read "AROLDIS CHAPMAN 6'4 215LB 105MPH FASTBALL BEAT BILLY HAMILTON 6'0 1560LB 57 BASES IN 114 GAMES IN 100-YARD LEARN WHY."  This content suggested to potential customers that Chapman was associated with and endorsed Top Velocity and/or had used Top Velocity's products, and used the valuable commercial appeal of Chapman's name and likeness to increase the consumer appeal of defendants' products.

22.  In August 2018, Top Velocity's website continued to make unauthorized uses of the names, images, and other protected attributes of at least 32 players, and Top Velocity's YouTube

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

channel likewise contained numerous unauthorized uses of players' images and other protected attributes.  MLBPA members whose names and images were being used by defendants without authorization from the players or from MLBPA in August 2018 included Chris Archer, Jake Arrieta, Archie Bradley, Aroldis Chapman, Yu Darvish, Wade Davis, Ken Giles, Sonny Gray, Matt Harvey, Kyle Hendricks, Felix Hernandez, Kelvin Herrera, Greg Holland, Joe Kelly, Matt Kemp, Clayton Kershaw, Carlos Martinez, Mike Minor, Yadier Molina, Matt Moore, James Paxton, Hunter Pence, Salvador Perez, Jose Quintana, Chris Sale, Max Scherzer, Stephen Strasburg, Marcus Stroman, Mike Trout, Adam Wainwright, and Zack Wheeler.

23.  One image of Chapman (whose name or likeness was used on at least six different webpages on Top Velocity's August 2018 website) was included on webpage entitled "Top 10 Tips to Throwing Harder."  The webpage included an image with a woman in a tiara throwing a baseball in the top half and a picture of Chapman in the bottom half, with the text "LEARN WHY YOU THROW LIKE THIS" over the woman's image and the text "AND NOT LIKE THIS" over Chapman's picture.  The webpage encouraged potential customers to watch a video entitled "TOP 10 TIPS TO THROWING HARDER" that would instruct customers "how [Pourciau] developed the 3X Pitching Velocity Program which turned [him] into a beast and got [him] into pro ball" and "also helped many others do the same."  The launch page for the video had its title overlaid over images of Chapman and fellow MLBPA member Jerry Blevins.

24.  Top Velocity's use of Chapman's image in promoting its 3X Pitching Velocity Program suggested that Chapman was associated with or endorsed Top Velocity's 3X Pitching Velocity Program (which Top Velocity sells for prices ranging from $197 to $997), and increased the consumer appeal of the 3X Pitching Velocity Program by virtue of the perceived association with Chapman.

25.  Another August 2018 webpage on Top Velocity's site was entitled "Top 10 Workout Programs For Catchers."  The top of the page contained two images of MLBPA member Salvador Perez with the overlaid text "LEARN ELITE CATCHER PROFILE AND WORKOUTS."  The bottom of the page described Top Velocity's "2X Velocity Program" and its "2X Sub 2.0 Pop Time Program," and stated that those programs "incorporate all of the

workouts or training listed in the top 10 workout programs for catcher," "have been proven successful over and over again," and would "take your game to the elite level." The description was followed by an image and link labeled "Buy Now!" through which customers could purchase those programs.

26. As with Top Velocity's use of Chapman's image, Top Velocity's use of Perez's image in promoting its 2X Velocity Program and 2X Sub 2.0 Pop Time Program suggested that Perez was associated with or endorsed those programs, and increased the consumer appeal of those programs by virtue of their perceived association with Perez.

27. After learning of Top Velocity's continued infringement of the rights of MLBPA and its members, MLBPA again notified Top Velocity of the infringing uses in August 2018 and several times thereafter. As of the filing of this Complaint, Top Velocity has not removed the infringing uses identified in that letter from its website.

## FIRST CAUSE OF ACTION

### Violation of California's Statutory Right of Publicity, Cal. Civ. Code §3344

28. MLBPA re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

29. California Civil Code §3344(a) provides a cause of action for the knowing use of "another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent."

30. Defendants Top Velocity and Pourciau knowingly and intentionally violated Civil Code §3344(a) by using players' names, photographs, and likenesses for the purposes of advertising, selling, or soliciting purchases of Top Velocity's products, merchandise, goods, and services without prior consent.

31. Because MLBPA is the exclusive group licensing agent for current MLB players and has been granted the exclusive right to use, license, and sublicense currents players' names, images, and likenesses for the purposes of any commercial marketing or promotional activity in which three or more players are identified, Civil Code §3344(a) required Top Velocity to obtain

MLBPA's prior consent before using the players' names, photographs, and likenesses in its website, social media accounts, YouTube channel, and other promotional and instructional materials.

32.  Through defendants' unauthorized use of players' names, photographs, and likenesses, defendants unjustly appropriated the economic value of the players' good will; diluted the commercial value of the players' names, photographs, and likenesses; and forced those players to associate with individuals and products they would not otherwise choose to endorse.

33.  For their violations of §3344(a), defendants are liable to MLBPA for the damages sustained by MLBPA and its members, statutory penalties, an accounting of all sales and profits relating to their misappropriation of player likenesses, disgorgement of all profits generated by virtue of the unauthorized uses, punitive damages, and attorneys' fees.

**SECOND CAUSE OF ACTION**

**Violation of California's Common Law Right of Publicity**

34.  MLBPA re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

35.  In addition to recognizing a statutory right of publicity, California recognizes a common-law right of publicity that provides individuals with a cause of action for the unauthorized commercial exploitation of those individuals' names or likenesses.  This common-law right may be assigned to third parties like MLBPA.

36.  Defendants Top Velocity and Pourciau knowingly and intentionally violated the common law publicity rights of current MLB players, which those players assigned to MLBPA for purposes of group licensing, by using the names, photographs, and likenesses of at least three current MLB players for the purposes of advertising, selling, or soliciting purchases of Top Velocity's products, merchandise, goods, and services without MLBPA's prior consent.

37.  Through defendants' unauthorized use of players' names, photographs, and likenesses, defendants unjustly appropriated the economic value of the players' good will, which the player had assigned to MLBPA; diluted the commercial value of the players' names,

1  photographs, and likenesses; and forced the players to associate with individuals and products

2  they would not otherwise choose to endorse.

3      38.  For their violations of MLBPA's assigned rights, defendants are liable to MLBPA

4  for compensatory and punitive damages, as well as accounting of all sales and profits relating to

5  the misappropriation of player likenesses, and disgorgement of all profits generated by virtue of

6  the unauthorized uses.

7                          **THIRD CAUSE OF ACTION**

8                     **Lanham Act, 15 U.S.C. §1125(a)(1)(A)**

9      39.  MLBPA re-alleges and incorporates by reference the allegations set forth in the

10 preceding paragraphs.

11     40.  The Lanham Act prohibits the use of "any word, term, name, symbol, or device, or

12 any combination thereof" that "is likely to cause confusion, or to cause mistake, or to deceive as

13 to the affiliation, connection, or association of such person with another person, or as to the

14 origin, sponsorship, or approval of his or her goods, services, or commercial activities by another

15 person."  15 U.S.C. §1125(a)(1)(A).

16     41.  Defendants Top Velocity and Pourciau knowingly and intentionally violated the

17 Lanham Act by using the names, photographs, and likenesses of at least three current MLB

18 players in interstate commerce in a manner that falsely suggested the players were affiliated,

19 connected, or associated with Top Velocity or had sponsored or approved Top Velocity's goods,

20 services, or commercial activities.  Defendants' use of players' names, photographs, and

21 likenesses had the purpose and effect of deceiving and misleading actual and potential customers

22 of its programs, products, and services.

23     42.  Because MLBPA is the exclusive group licensing agent for current MLB players and

24 has been granted the exclusive right to use, license, and sublicense currents players' names,

25 images, and likenesses for the purposes of any commercial marketing or promotional activity in

26 which three or more players are identified, MLBPA was damaged by defendants' deceptive and

27 misleading use of players' names, photographs, and likenesses.  Defendants are therefore liable

28 to MLBPA for compensatory and treble damages, disgorgement of their profits, costs, and

attorneys' fees.

## PRAYER FOR RELIEF

43.   Wherefore, MLBPA respectfully prays that this Court:

a.   Enter preliminary and permanent injunctions prohibiting defendants from using current Major League Baseball players' names, likenesses, photographs, or other identifying characteristics in advertising, marketing, and promoting their programs, products, and services, including on any Top Velocity website, in defendants' social media, in any videos released by defendants on YouTube or elsewhere, or in any other promotional or instructional materials;

b.   Declare that defendants' prior uses of current Major League Baseball players' names, likeness, photographs, and other identifying characteristics violated MLBPA's assigned rights under California Civil Code §3344, California's common-law right of publicity, and the Lanham Act;

c.   Provide an accounting of all of defendants' sales and profits relating to defendants' misappropriations of MLBPA's members' names, likenesses, or personas;

d.   Award MLBPA compensatory damages, treble damages, punitive damages, and statutory penalties;

e.   Require defendants to disgorge to MLBPA all profits generated from the products, programs, and services that defendants marketed, promoted, and advertised unlawfully;

f.   Award MLBPA its costs and attorneys' fees; and

g.   Award such further and additional relief as is just and proper.

Dated:  August 15, 2019          By:      /s/Michael Rubin
                                          MICHAEL RUBIN
                                          P. CASEY PITTS
                                          Altshuler Berzon LLP

                                          HEATHER CHASE
                                          Major League Baseball Players Association

                                          *Attorneys for Plaintiff*
                                          *Major League Baseball Players Association*

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF